RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE  11 / 10 / 11
     BPB

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

CYD A. BRUCE,                     CIVIL ACTION
       Petitioner                 1:11-CV-00286

VERSUS

MICHAEL J. ASTRUE, COMMISSIONER   JUDGE DEE D. DRELL
OF SOCIAL SECURITY,               MAGISTRATE JUDGE JAMES D. KIRK
       Respondent


REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Cyd A. Bruce ("Bruce") filed application for disability insurance benefits ("DIB") (Tr. p. 130) and supplemental security income ("SSI") benefits (Tr. p. 133) on April 9, 2007 alleging a disability onset date of October 14, 2006 due to bulging discs at L5/S1, offset vertabrae with scoliosis, degenerative disc disease, and neck spurs (Tr. p. 167). Those applications were denied by the Social Security Administration ("SSA") (Tr. p. 83).

A de novo hearing was held before an administrative law judge ("ALJ") on April 14, 2009, at which Bruce appeared with her attorney and a vocational expert ("VE") (Tr. pp. 23-77). The ALJ found that, although Bruce has a severe impairment of lumbar degenerative disc disease, she has the residual functional capacity to perform light work except that she can sit for no more than one hour at a time and up to six hours total in an eight hour day, stand for no more than two hours at a time and up to six hours in an eight hour day, walk for no more than one hour at a time and up

to six hours in an eight hour day, can only occasionally operate foot controls with her right lower extremity, needs a break every two hours, and cannot climb ladders or scaffolds, work with or near open dangerous moving machinery, work at unprotected heights, or work where walking on rocky surfaces is required, can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, and should avoid concentrated exposure to extreme cold or vibration, particularly through the lower extremities (Tr. pp. 13, 15). The ALJ concluded that Bruce could do her past relevant work as a waitress, and therefore she was not under a disability as defined in the Social Security Act at any time through the date of the ALJ's decision on May 21, 2009 (Tr. p. 18).

Bruce requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 1), and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Bruce next filed an appeal in this court for judicial review of the Commissioner's final decision, raising the following issues for review:

> 1. The Commissioner failed to properly evaluate the medical opinion evidence and to properly incorporate the limitations therein in Bruce's residual functional capacity, which resulted in a residual functional capacity that is not supported by substantial evidence.

> 2. The Commissioner erroneously found Bruce can return to work as a waitress despite having assigned a residual functional capacity that would preclude such work.

Bruce filed an appellate brief (Doc. 9), to which the Commissioner responded (Doc. 12).

## Eligibility for Benefits

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. 1382(a). To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(i), 423. Establishment of a disability is contingent upon two findings. First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423 (d)(1)(A). Second, the impairments must render the plaintiff unable to engage in the work

previously performed or in any other substantial gainful employment that exists in the national economy.   42 U.S.C. 423(d)(2).

<u>Summary of Pertinent Facts</u>

1.   Medical Records

On September 30, 2006, Bruce was treated for low back pain from an injury that occurred that day as she was carrying an oxygen tank up stairs (Tr. pp. 228, 284, 331).   Bruce was working as a bus driver at the time (Tr. p. 228).   Dr. Joe Boulder diagnosed lumbar pain and left lumbar radiculitis, prescribed ibuprofen 800 mg., cyclobenzaprine 10 mg, and hydrocodone/APAP 5mg/500 mg, and told Bruce not to repetitively lift over ten pounds, bend more than ten times per hour, push/pull with over ten pounds of force, or drive the bus (Tr. pp. 297, 349).   Bruce returned for a follow-up appointment on October 3, 2006 for physical therapy and was given exercises to perform two to three times per day (Tr. pp. 340-342). Bruce was released to work on October 5, 2006 with a diagnosis of lumbar strain and restrictions of no lifting over ten pounds, no ending, no pushing or pulling over ten pounds of force, no squatting or kneeling, and no driving the bus (Tr. pp. 323, 325).

Bruce again strained her low back while lifting water at work in early October 2006; Bruce went to the emergency room on October 14, 2006 complaining of pain from her left buttock to her calf which increases with movement (Tr. p. 209).   Bruce was diagnosed with sciatica and prescribed Dilaudid (Tr. pp. 210-212).   Bruce's

follow-up care was provided by Dr. Kirk Holmboe, a family medicine doctor (Tr. pp. 304-321). On October 18, 2006, Dr. Holmboe noted that her MRI indicated a herniated lumbar disc with S1 radiculopathy and referred her for neurological evaluation (Tr. p. 270).

Bruce was evaluated by Dr. James S. Ogsbury III, a neurosurgeon, on or about October 25, 2006, who found she had a slow, normal gait, diffuse (but no point) tenderness in her low back, positive straight leg raising on the left with significant discomfort, and limited toe raising on the left with significant discomfort (Tr. pp. 215-216, 260-262, 267-269). Dr. Ogsbury also reviewed Bruce's October 16, 2006 MRI and found mild degenerative changes at L3/4 and slightly more at L4/5, Grade I spondylolisthesis at L5/S1, and a herniated disc on the left in a position that could compress the left S1 nerve root (Tr. pp. 217, 278-279). Ogsbury diagnosed herniated nucleus pulposis L5/S1, as well as hypertension and hypothyroidism, and prescribed an epidural steroid injection (Tr. p. 217).

On November 10, 2006, Dr. Holmboe noted that Dr. Ogsbury recommended a referral to the orthopedic surgeon for evaluation (Tr. p. 244). Dr. Holmboe found Bruce still had pain in her back and down her left leg which goes into the bottom of her foot if she stands too long, as well as pain on extension; Bruce remained on a no-work status and he referred Bruce to a surgeon (Tr. pp. 235,

5

244). On November 28, 2006, Dr. Holmboe noted Bruce had an antalgic gait, difficulty with heal-and-toe walking, was not working, had limited her activities, and was taking her pain medication occasionally (Tr. p. 237).

On March 2, 2007, Bruce was involved in an auto accident; she reported to an emergency room and was diagnosed with cervical strain, lumbar strain, and a strained left thumb (Tr. pp. 354-356). Bruce was prescribed Vicodin and Flexeril (Tr. p. 256) and later was prescribed physical therapy. On March 19, 2007 the physical therapist wrote that none of Bruce's goals were achieved because she stopped going to physical therapy, although she reported compliance with her home exercise program (Tr. p. 368). Later, Bruce resumed physical therapy (Tr. pp. 386-408). In April, x-rays showed her thumb was only sprained, there were no fractures or joint subluxations or dislocations in either hand, and she was given exercises (Tr. pp. 380-381).

X-rays of Bruce's cervical spine in July 2007 showed multilevel disc and facet degenerative changes at C3-4, C4-5, C5-6 and C 6-7 (Tr. p. 409), and Grade 1 L5/S1 spondylolisthesis with associated disc and facet degenerative changes (Tr. p. 410). Dr. Claudia Elsner, a family medicine doctor, evaluated Bruce in July 2007 and found she was 53 years old, had neck and back pain, did not use any assistive device, was able to drive, was independent in self-care, and reported pain so severe that she "live[d] on

6

narcotics" (Tr. p. 411). Dr. Elsner found Bruce had pain mostly over the lower lumbosacral area midline over both buttocks but more on the left side, and occasionally had pain down her left leg, walked normally, had normal posture, and had good toe and heel walking (Tr. p. 412). Dr. Elsner diagnosed lumbar disc disease and spondylolisthesis per the MRI report, no overt radiculopathy in the lower extremities that day, and obesity (5'tall, 174 pounds) (Tr. p. 413). Dr. Elsner stated that Bruce did not appear to need back surgery at that time, but needed physical therapy and support to continue her home stretches, needed to apply proper back mechanics, and should not do work requiring prolonged standing or sitting without the opportunity for frequent postural changes (Tr. p. 413). In July 2007, Bruce was noted to have a full range of motion in her extremities (Tr. p. 433).

In August 2008, a consultative exam by Dr. Alvin Otsuka, an oncologist (Bruce was being examined for a possible tumor), showed Bruce was not in acute distress and the exam of her extremities was negative (Tr. pp. 423-424). In November 2008, Bruce complained of low back pain and hand pain to a nurse practitioner and was noted to be taking Vicodin and Fexeril (Tr. pp. 416, 428, 432).

Bruce was evaluated by Dr. Douglas C. Scott, an occupational medicine doctor, on December 1, 2008 (Tr. p. 228). Dr. Scott noted that Bruce was 52 years old and complained of pain radiating from her lower back into her left buttocks, left posterior leg, left

7

calf, and left foot, for which she was taking Vicodin (Tr. pp. 228-229). Dr. Scott noted that Bruce was 5'1" tall and weighed 183 pounds (Tr. p. 232). Dr. Scott found Bruce had low back pain with radiating pain into her left leg and foot which approximated the left S1 nerve root distribution, so he suspected L5-S1 herniated nucleus pulposus with protrusion of the disc at L5-S1 and compression on the left S1 descending nerve root which probably caused a compressive left S1 radiculopathy or left S1 radiculitis (Tr. p. 233). Dr. Scott also found Bruce had stable Grade 1 anterospondylolisthesis (Tr. p. 233). Dr. Scott stated that Bruce probably had weakness of the L5-S1 disc annulus prior to her injury on September 30, 2006 due to her degenerative disc and facet disease and the known congenital L5-S1 spondylolisthesis; Dr. Scott's opinion was that stepping up the steps on September 30, 2006 did not cause Bruce's disc herniation at L5-S1 (Tr. pp. 233-234). Dr. Scott stated that Bruce's pre-existing spondylolisthesis may have produced enough stress at the L5-S1 disc level to lead to accelerated degenerative changes of the L5-S1 disc, including accelerated degeneration of the annular fibrosis with resulting weakening and probably protrusion of the L5-S1 disc (Tr. p. 234). Dr. Scott recommended that Bruce consider decompression at L5-S1 with possible fusion (Tr. p. 234).

In March 2009, Bruce was noted to have no pedal edema in her extremities and her weight was up to 187 pounds (Tr. pp. 462-464).

8

Bruce complained of back and hip pain, had spinal tenderness on palpation, normal heel and toe walk, and positive straight leg raises (Tr. pp. 469-471). Bruce was prescribed Vicodin (Tr. p. 471).

In April 2009, Bruce weighed 188 pounds and she reported back problems, difficulty lifting more than ten pounds, problems with mopping or repetitious movement, inability to stand for long periods or sit for more than 15 to 30 minutes, increased pain with walking, and pain radiating to her knees (Tr. p. 466). Bruce had tenderness at L5-S1, positive straight leg raises, sciatic notch tenderness, but normal toe and heel walking (Tr. p. 467). Bruce was diagnosed with chronic low back pain, was advised to exercise and lose weight, and was prescribed Vicodin and Flexeril (Tr. p. 468).

### 2. April 2009 Administrative Hearing

Bruce testified that she was 54 years old and had a high school education (Tr. p. 30). Bruce testified that she had received a settlement from worker's compensation, received food stamps, and had been selling a little bit of Avon for about eight months (Tr. pp. 31-32). Bruce lived with her ex-husband, who was employed (Tr. pp. 51, 54).

Bruce testified she also had past work experience at the Paragon Casino Resort from December 2007 through January 2008 (Tr. p. 32), where she carried a money bag around her waist that weighed

about fifteen pounds (Tr. p. 33), and worked at Walmart in August through September 2007 as a cashier, where she lifted up to twenty pounds (Tr. pp. 33-34). Bruce testified she had to quit working at the casino because the money bag around her waist hurt her back, and she had to quit working at Walmart because that job involved too much standing, bending and stooping (Tr. p. 35). For about four months in 2007, Bruce drove a bus about eight hours a day and assisted people with their motorized wheelchairs (Tr. p. 35). Bruce also worked as an in-home caregiver/sitter for nine months, about 32 hours per week (Tr. p. 36). Bruce testified she had to assist the client with transferring in and out of her wheelchair, and did cooking, light cleaning, and took the client to the grocery store (Tr. pp. 37-38). Bruce also worked for another casino from 1995 through 2004, where she moved a change cart around, did customer service, and paid jackpots; she lifted up to 25 pounds and was on her feet all day, forty hours per week (Tr. 38-40). For a few months in 2001, Bruce testified that she worked part time as a cashier at Target (Tr. p. 40). In 1994, Bruce worked as a waitress and hostess for nine months, lifting up to 20 pounds and staying on her feet all day (Tr. pp. 40-41).

Bruce testified she can no longer work as a caregiver because she cannot lift enough (t. p. 65), although she thought she could do that work if she did not have to assist the client with transferring (Tr. p. 65). Bruce testified she was offered a

10

permanent caregiver job in the last year which she turned down because she did not think she could work six days a week, drive every day, and stand up to cook and clean all day (Tr. p. 67).

Bruce testified that she can no longer work due to pain that is in her waist down to her tailbone, across her lower back, down her left leg to the calf, and in her right hip (Tr. pp. 41-42). Bruce testified that her physical pain causes mental pain (Tr. pp. 41-42). Bruce testified that, without medication, the pain in her back is 5 on a scale of 1 to 10, but is 2 if she takes Vicodin (Tr. pp. 42-43), her leg pain if 5 or 6 without medication and 3 with Vicodin, and her hip pain is 4 without medication and 0 with Vicodin (Tr. pp. 45-47). Bruce testified that she takes Vicodin about four times a week and that it eases her pain for a day (Tr. pp. 43-44). Bruce testified that she does not experience any side effects from the Vicodin (Tr. p. 44). Bruce also testified that most jobs do not allow a person to work when taking narcotics (Tr. p. 56). However, if that were not a problem, Bruce testified she could probably work about three hours before she started hurting (Tr. pp. 56-57); if she took more than one Vicodin, she might be able to work longer but does not think she could work consistently enough to work full time (Tr. p. 58).

Bruce testified that she has a hard time moving and bending when she wakes in the morning (Tr. p. 45). Bruce testified that her pain triggers are too much lifting, repetitive movements such

when as mopping, and bending (Tr. p. 45). Bruce testified that a hot bath eases her pain (Tr. p. 45).

Bruce testified that she can sit for about 15 minutes without medication, and she can sit for about an hour if she takes Vicodin (Tr. pp. 47-48). Bruce can walk a couple blocks without medication and can walk about an hour if she takes Vicodin (Tr. p. 48). Bruce can stand about an hour without medication and can stand (if she can shift her weight back and forth) about three hours if she takes Vicodin (Tr. p. 49). Bruce testified that she can lift up to ten pounds three times a day if she has not taken medication, and up to 20 pounds four or five times a day if she takes Vicodin (Tr. pp. 50, 63-64).

On a typical day, Bruce testified that sometimes she gets up at about 4:30 a.m., when her ex-husband leaves for work, makes and drinks coffee, then she may talk to her children on the phone (they live out of state) or go back to bed about mid-morning and rests another hour or so, then she bathes, cooks, watches a little TV, and naps in the afternoon for a couple of hours (Tr. pp. 54-55). Bruce testified that she lies down in the morning and afternoon for one to two hours because her back is tired or hurting (Tr. pp. 50, 55, 60). Bruce testified that she wishes she could still exercise and be more active (Tr. p. 55). Bruce testified that she can cook for about two hours at a time because she is able to move around and sit down if she needs to (Tr. pp. 64-65).

12

Bruce testified that she can walk up and down stairs, she does the laundry (although her ex-husband carries the laundry up and down the stairs for her) (Tr. p. 51) and washes the dishes, she and her ex-husband do the grocery shopping together (which takes about two hours), and she drives about three times a week within about five miles.  Bruce testified that a friend goes over and does the heavy housework, such as mopping, bathrooms and floors, a couple times a week (Tr. pp. 60-61).

Bruce testified that, aside from Vicodin, she also takes Carafate for her stomach, two medicines to control her blood pressure, cholesterol medication, a B12 shot every month (Tr. pp. 53-54), and an anti-depressant (Tr. p. 76).  Bruce testified that she is not aware of any side effects from these medications (Tr. p. 54).

The Vocational Expert ("VE") testified that Bruce's job as a waitress was semi-skilled, light work, her work as a home health aide was semi-skilled medium work (but very heavy work as actually performed), and her work as a change person at a casino was unskilled, medium work (Tr. p. 70).

The ALJ posed hypotheticals which involved a person of Bruce's age, education and work experience (Tr. p. 70).  In the first hypothetical, the ALJ stated the person could occasionally lift twenty pounds, frequently lift ten pounds, sit up to an hour at a time and up to six hours in an eight hour day, stand two hours at

13

a time and up to six hours a day, walk up to one hour at a time and up to six hours a day, can only occasionally operate foot controls with the right lower extremity, requires regular work breaks every two hours in an eight hour shift, cannot climb ladders of scaffolding, cannot work with or near open, dangerous moving machinery, at unprotected heights, or where walking on rocky surfaces is required, can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and should avoid concentrated exposure to extreme cold and vibration, especially through the lower extremities.  The VE testified that such a person could work as a waitress, both as customarily performed and as Bruce performed it in her past work (Tr. p. 71).  The VE further testified that, if the person could only lift a maximum of ten pounds, she would not be able to do that work (Tr. p. 75).

In a second hypothetical, the ALJ stated the person can occasionally lift ten pounds, frequently lift less than ten pounds, sit for about half an hour at a time for a total of four to five hours in an eight hour day, stand and walk up to one half hour at a time for a total of four to five hours in an eight hour day, needs regular work breaks, can only occasionally operate foot controls with the right lower extremity, should not climb ladders or scaffolding or work near open, dangerous moving machinery, at unprotected heights, or where walking on rocky surfaces is required, can only occasionally climb ramps and stairs, balance,

14

stoop, kneel, crouch, and crawl, and should avoid concentrated exposure to extreme cold and vibration, especially through the lower extremities. The VE testified that such a person could not do any of her past work, but could work as a surveillance system monitor (sedentary work), assembly work (light, unskilled, only 10 percent of those jobs or 330 jobs in Colorado and 3560 jobs nationally), or toll collector (light, unskilled, DOT 211.462-038, 400 jobs in Colorado and 29,000 nationally) (Tr. pp. 71-75). The ALJ stated that the numbers of jobs available under the second hypothetical were not significant (Tr. p. 75).

### ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Bruce (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131

L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that she is disabled.  Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis.  Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Bruce has not engaged in substantial gainful activity since October 14, 2006 (Tr. p. 13) and that she has a severe impairment of lumbar degenerative disc disease, but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. p. 13).  The ALJ then found that, as of May 21, 2009, Bruce was still able to perform her past relevant work as a waitress (Tr. p. 18).  The sequential analysis thus ended at Step 4, with a finding that Bruce was not disabled.

<u>Scope of Review</u>

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors.  McQueen v. Apfel, 168

F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a

"conspicuous absence of credible choices" or "no contrary medical evidence."  <u>Johnson v. Bowen</u>, 864 F.2d 340 (5th Cir. 1988); <u>Dellolio</u>, 705 F.2d at 125.

<u>Law and Analysis</u>

Bruce contends the Commissioner failed to properly evaluate the medical opinion evidence and to properly incorporate the limitations therein in Bruce's residual functional capacity, which resulted in a residual functional capacity that is not supported by substantial evidence.  Bruce also argues the Commissioner erroneously found Bruce can return to work as a waitress despite having assigned a residual functional capacity that would preclude such work.

The ALJ's finding that Bruce could perform her past relevant work indicates the ALJ's conclusion that Bruce did not 'meet her burden of proving that she could not return to such work.  Bruce argues that she cannot return to her work due to pain.  However, Bruce has not shown that she suffers from disabling pain.

Although a claimant's assertion of pain or other symptoms must be considered by the ALJ, 42 U.S.C. § 423(d)(5)(A) requires that a claimant produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged. The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain will not take precedence over conflicting medical evidence.  <u>Harper v. Sullivan</u>,

18

887 F.2d 92, 96 (5ᵗʰ Cir. 1989), citing Owens v. Heckler, 770 F.2d 1276, 1281 (5ᵗʰ Cir. 1985).  The mere existence of pain is not an automatic ground for obtaining disability benefits.  The factual determination of whether the claimant is able to work despite some pain is within the discretion of the Administrative Law Judge and will be upheld if supported by substantial evidence.  Fortenberry v. Harris, 612 F.2d 947, 950 (5ᵗʰ Cir. 1980).

A claimant's symptoms, including pain, will be determined to diminish a claimant's capacity for basic work activities to the extent that the claimant's alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §404.1529(c)(4).  Subjective complaints of pain must be corroborated by objective medical evidence.  Chambliss v. Massanari, 269 F.3d 520, 522 (5ᵗʰ Cir. 2000).  Although severe pain can constitute a nonexertional impairment, pain is a disabling condition only when it is constant, unremitting and wholly unresponsive to therapeutic treatment.  Chambliss, 269 F.3d at 522.

While pain can be severe enough to create a disabling condition, the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled.  Elzy v. Railroad Retirement Bd., 782 F.2d 1223, 1225 (5ᵗʰ Cir. 1986); Loya v. Heckler, 707 F.2d 211, 215 (5th Cir. 1983).  The

19

ALJ's decision on the severity of pain is entitled to considerable judicial deference. James v. Bowen, 793 F.2d 702, 706 (5th Cir. 1986); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987). Such a credibility determination is within the province of the ALJ. Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Wren v. Sullivan, 925 F.2d 123, 128-29 (5th Cir. 1991). Hence, the law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints and articulate his reasons for rejecting any subjective complaints. Falco v. Shalala, 27 F.3d 162, 163-64 (5th Cir. 1994).

The ALJ made the following findings as to Bruce's pain and credibility (Tr. pp. 15-16):

"The Administrative Law Judge considers the claimant's testimony regarding the severity of her pain to be credible. However, the level of the pain that the claimant experiences is mild, and decreases significantly when she takes Vicodin. The pain level that she experiences when she takes Vicodin does not support a finding of disability. Rather, the claimant would be able to work given the generally low level of her pain. Furthermore, the claimant does not require Vicodin every day, but four days per week. When she takes pain medication the claimant's physical abilities are consistent with a residual functional capacity for light work. The claimant testified that she does not have side effects from Vicodin. Therefore, the claimant's testimony supports a finding that she could perform light exertion work within the residual functional capacity set forth above, when she takes pain medication.
          *          *          *
"Although the claimant's daily activities are somewhat limited, they show that she is capable of performing the basic requirements of light exertion work. The Administrative Law Judge does not accept the claimant's testimony that she must lie down for one to two hours in the afternoon, because this is not consistent with the

low level of pain that she experiences."

Since the ALJ in this case has made the mandatory indication of the basis for his credibility choices concerning claimant's complaints, and since his choices are not unreasonable, his finding that Bruce's pain would not prevent Bruce from performing work is proper. Carry v. Heckler, 750 F.2d 479, 485-86 (5th Cir. 1985). Moreover, as noted by the ALJ, the only doctor who limited Bruce's ability to work was Dr. Elsner, who stated that Bruce should not do work requiring prolonged standing or sitting without the opportunity for frequent postural changes. Since the work limitations imposed by the ALJ are more restrictive than Dr. Elsner's assessment, Bruce cannot show prejudice arising from her claim that the ALJ dismissed Dr. Elsner's opinion. Bruce relies solely on her own self-serving testimony to support her claim of even greater functional restrictions. It is also noted that the VE found Bruce can work as a waitress, both as that job is usually performed and as Bruce performed it in the past, under the restrictions imposed by the ALJ's first hypothetical. Since the ALJ's credibility determination is entitled to great weight, and Bruce's medical evidence supports the ALJ's findings, substantial evidence supports the ALJ's finding that Bruce can perform her past relevant work as a waitress.

Although Bruce argues the ALJ's findings as to her residual functional capacity are erroneous, Bruce had the burden, at Step 4

of the sequential analysis, of proving she is unable to perform her past work, and she clearly did not do so.  Bruce failed to show with medical evidence that she needed to have a sit/stand option more frequently than every hour or that being able to move and shift her weight around would be an inadequate postural change in under an hour.  Compare McKay v. Astrue, 2008 WL 2074053, *12 (W.D.Wash. 2008).

Therefore, substantial evidence supports the ALJ's conclusion that Bruce is not disabled by pain.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be AFFIRMED and that Bruce's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

22

FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _____ day of November 2011.


JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE